Case: 2:14-cv-00581-ALM-KAJ Doc #: 3 Filed: 06/17/14 Page: 1 of 31 PAGEID #: 46

Roy A. Durham, Jr.,
(S.O.C.F)
1724 State Rt. 728
Lucasville, Ohio 45699

(Original)
Judge Copy

RECEIVED
JUN 16 2014
JOHN P. HEHMAN, CLERK
COLUMBUS, OHIO

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| Roy A. Durham, Jr., Plaintiff, | CASE No.: 2:14CV-581 |
| Vs. | Judge : JUDGE MARBLEY |
| Gary C. Mohr, ET AL., Defendants. | Magistrate Judge : MAGISTRATE JUDGE KING |
| | Civil Complaint |
| | Jury Trial Demand Fed. R. Civ. P. 38, Brought informa Pauperis Status, 28 u.s.c. § 1915; and Civil Complaint 42 u.s.c. § 1983. |

### I. Jurisdiction and Venue.

1). This A civil action Authorized by 42 u.s.c § 1983 to redress the deprivation under Color of State Law, of Rights secured by the Constitution of

the United States; And Challenges to Conditions of Confinement.

2). This Court has jurisdiction under 28 u.s.c § 1331 and 1343 (A)(3); and this Action exceeds ⹁75,000.oo (seventy - five thousand dollars) giving this Court final jurisdiction to try.

3). This Court has supplemental jurisdiction under 28 u.s.c. § 1367 (A) over All other claims that are related.

4). This Court further retains subject-matter jurisdiction as this case involves federal con-stitutional violations of the fourteenth, and Eighth Amendment founded upon deliberate indifference, Committed in Contravention of 42 u.s.c. § 1983; and unconstitutional Conditions of Confinement.

5). The Southern District of Ohio, Eastern Division is An Appropriate venue under 28 u.s.c. § 1391 (b)(2) because this district Court is seated in the geographical teritory of Ross Correctional Institution (R.c.I) where A part of the events giving rise to the claims occured.

## II. Plaintiff.

6). Plaintiff Roy A. Durham, Jr., (Plaintiff Durham) is and was at all times mentioned herein a prisoner of the state of Ohio, in custody of the Ohio Department of Rehabilitation and Corrections (O.D.R.C).

7). Plaintiff Durham is currently confined at the Southern Ohio Correctional Facility (S.O.C.F), at 1724 State Route 728, Lucasville, Ohio 45699.

## III. Defendants.

8). Defendant Gary C. Mohr (defendant Mohr) is the Director of the Ohio Department of Rehabilitation and Corrections (O.D.R.C) at 770 West Broad Street, Columbus, Ohio ~~43222~~. 43222.

9). Defendant Rob Jeffreys (defendant Jeffreys) was the Chief Bureau of Classification and reception at (O.D.R.C), 770 West Broad Street, Columbus, Ohio 43222.

10). Defendant Gary R. Croft is the Chief Inspector of (O.D.R.C)

11). Defendant L.C. Coval is the Deputy Chief inspector of (O.D.R.C).

12). Defendant William Eleby was the Chief Bureau of Classification and reception of (O.D.R.C).

13). Defendant Keith Smith was the Warden At Toledo Correctional Institution (T.C.I).

14). Defendant Timothy Buchanan was the Warden of Ross Correctional Institution (R.C.I).

15). Defendant Jeff Lisath was the Deputy Warden of Operations At (R.C.I).

16). Defendant Robert Whitten is the inspector of institutional Services At (R.C.I).

17). Defendant Wayne Ford was the Acting inspector of institutional Services At (R.C.I).

18). Defendant Lorrie Perry was the Acting

inspector of institutional Services / inspector of institutional Services Assistant At (R.C.I).

19). Defendant JAMES Dodrill is the unit manager at (R.C.I).

20). Defendant JR. Byrd is A unit Staff member At (R.C.I).

21). Defendant MARK Guy is A Unit Counsler / Sargeant At (R.C.I).

22). Defendant Robert Letts is A CASE manager At (R.C.I).

23). Defendant Darrel Brown is A Corrections officer At (R.C.I).

24). Defendant Darren Hall is A Lieutenant At (R.C.I).

25). Defendant _____ Seachrist was the Supervising mental Health doctor At (R.C.I).

26). Defendant _____ Haynes was A mental Health doctor At (R.C.I).

27). DEFENDANT HARLEY HINTON IS A UNIT COUNSLER / SARGEANT AT (R.C.I).

28). DEFENDANT RICK COCKRILL IS A LIEUTENANT AT (R.C.I).

29). DEFENDANT FRED POLLARD IS A CORRECTIONS OFFICER AT (R.C.I).

30). DEFENDANT _____ MOORE IS A CORRECTIONS OFFICER AT (R.C.I).

31). DEFENDANT ROBERT FITZPATRICK IS A CORRECTIONS OFFICER AT (R.C.I).

32). DEFENDANT WARREN DENNY IS A CORRECTIONS OFFICER AT (R.C.I).

33). DEFENDANT TIMOTHY STARR IS THE FOOD SERVICE MANAGER AT (R.C.I).

34). DEFENDANT _____ IS A NURSE AT (R.C.I).

35). DEFENDANT RAY MCGRAW IS A CAPTIAN AT (R.C.I).

36). Defendant Michael Yates is a Lieutenant at (R.C.I).

37). Defendant Alisha Cunningham is a Lieutenant at (R.C.I).

38). Defendant Ray Blair is a Corrections officer at (R.C.I).

39). Defendant William Fuller is a Unit Counsler / Sargeant at (R.C.I).

40). Defendant Rodney Anderson is a Unit Counsler / Sergeant at (R.C.I.).

41). Defendant Adam Sheppard is a Corrections officer at (R.C.I).

42). Defendant Walter Rumer is a Corrections officer at (R.C.I).

43). Defendant Earlena Schorr is a Unit manager at (R.C.I).

44). Defendant Michael Sheets was a warden at ~~the~~ Warren Correctiona Institution (W.C.I).

45). Defendant Justin Johnson is a Unit staff member at (W.C.I).

46). Defendant Rosalie Battles is a Case manager at (W.C.I).

## IV. Facts.

47). There is a plot against Plaintiff Durham which began in Society before into his incarser- ation. The said plot continued against Plaintiff at the Cuyahoga County Jail (C.C.J) where many other inmates gained a role in said plot, and taunted and harassed Plaintiff.

48). The said plot was orchestrated to continue against Plaintiff at every institution he was transferred to. The said plot ~~????~~ resulted in Plaintiff Durham being placed in Administrative segregation for his safety at (C.C.J). Plaintiff was then taken out of Administrative segre- gation and placed on a Unit which is used to house Protective ~~????~~ Coustody inmates where he remained for the remainder of his stay at (C.C.J) from about June 2010 to July 2010.

49). The said plot continued against Plaintiff Durham upon his arival at Lorain Correctional Institution (Lor.c.I), Madison Correctional Institution (Ma.c.I), Trumbull Correctional Institution (T.c.I), Toledo Correctional Institution (To.c.I), Warren Correctional Institution (W.c.I), Ross Correctional Institution (R.c.I), Lebanon Correctional Institution (Le.c.I), and Southern Ohio Correctional Facility (S.O.C.F)

50). As a result of Plaintiff Durham's and Olivia Johnson (Plaintiff's mother) attempts to secure plaintiff's safety, thereby informing institutional staff members and supervisors of inmates taunting and harassment of Plaintiff and Correc-tions officers retaliation against Plaintiff, thereby exploiting plaintiff to other inmates as being a snitch, Plaintiff Durham developed a reputation of being a snitch. The said plot and Plaintiff's reputation of being a snitch, together with inmates knowledge of Plaintiff's prior conviction on rape charges "in which he did not commit", was widely spreaded amongse the inmate population in Ohio prison system.

51). In relations to said plot Plaintiff have been

physically attacked at (C.C.J), (LOR.C.I), (J.C.I), (W.C.I), (R.C.I), (LE.C.I), and (S.O.C.F).

52). Plaintiff Durham made a request for (P.C) at (J.C.I) but instead of conducting (P.C) investigation and proceedings set forth in Administrative Rule (A.R) 5120-9-14, (J.C.I) Administration obtained a institutional seperation between Plaintiff and the last (2) inmates who group assaulted Plaintiff at (J.C.I), and Plaintiff received a lateral transfer to (To.C.I).

53). As a result of continuation of said plot against Plaintiff upon his arival at (To.C.I), Plaintiff made a request for (P.C). Warden Keith Smith (defendant Smith) recommended another lateral transfer in lieu of (P.C) inspite of the history and persistance of said plot and the risk of continued serious harm to plaintiff upon transfer to other institutions in which he had been informed of. On or about October 4, 2011 William Eleby (defendant Eleby) granted the recommendation of lateral transfer in lieu of (P.C). On about October 4, 2011 Plaintiff Durham was transported to (W.C.I) where he continued to be taunted and harassed by

inmates there in relations to said plot.

54). On or about November 9, 2011 at (W.C.I) plaintiff sought help from defendant Reese which resulted in defendant Reese retaliating against Plaintiff and exploiting Plaintiff to other inmates as being a snitch. (For details see case number 1:13-cv-226).

55). Plaintiff Durham was unexpectingly attacked by inmate Johnson on November 19, 2011 at (W.C.I); Plaintiff Durham was attacked by a group of (3) inmates, i.e., (inmates Gordon, Jones, and Reese #A639929) on December 18, 2011; and attacked by inmate Wilkins/Wilkerson on April 1, 2012 at (W.C.I).

56). I must also be noted that amongst the inmates who heard defendant Reese exploit Plaintiff Durham as being a snitch (referred to in paragraph [54]) was inmate Poindextor #A637222.

57). On January 18, 2012 at (W.C.I) defendants Justin Johnson and Rosalie Battles improperly conducted a (P.C) hearing and plaintiff's claims were not fully investigated. Defendant Sheets

recommended that Plaintiff receive another lateral transfer in lieu of (P.C.), and a institutional seperation from inmates Gordon, Jones, and Reese #A639929. (see case number 1:13-cv-226).

58). On or about February 16, 2012 defendant Jeffreys denied plaintiff's objection to the (P.C.) recommendation of disapproval even after being informed of the history and persistance of said plot, and risk of continued serious harm to Plaintiff upon arival at subsequent institutions. Defendant Jeffreys granted defendant Sheets recommendation, placed a institutional seperation between inmates Gordon, Jones, and Reese #A639929, and transfered Plaintiff to (R.C.I) in lieu of (P.C.).

59). Upon information, belief and personal experience (R.C.I) warden (defendant Buchanan), Administrative and Unit staff members (defendants Dodrill, Byrd, Guy, Letts, Hinton, Cockrill and Blair, and others) began manipulating records and Plaintiff's situation against the intrists of Plaintiff's safety with motive to help (O.D.R.C) officials and wardens and staff members at (T.C.I), (Jo.C.I), (W.C.I), and themselves at (R.C.I)

avoid civil liability for injuries caused to Plaintiff as a result of such acts, omissions, and disregards to plaintiff health and ~~~~ safety previously committed by (O.D.R.C) officials and institutional staff members at (T.C.I),(To.C.I), and (W.C.I), as well as there (Ross Correctional Institution staff) intentional acts of placing plaintiff Durham around inmates who had either attacked Plaintiff or either planned to attack Plaintiff, so that he will be attacked and institutional records could be manipulated by other (R.C.I) staff members fabricating conduct reports, conducting unfair (R.I.B) hearings, ~~~ and harassing plaintiff as other (R.C.I) staff members avoided exposure of the existance of said plot against Plaintiff, while ~~~~~ ~~~~~ fabricating and making bad character records against Plaintiff.

60). On or about April 4, 2012 plaintiff informed defendant Fuller of a brief history of said plot, the threat to his well being, that the said plot had continued there at (R.C.I) through inmates who had previously landed roles in said plot, and that members of the Blood organization had indepth roles and are being used in plot against him. Defendant Fuller then assigned

Plaintiff Durham to a cell which set between (4) ~~two~~ neighboring inmates who are members of the Blood organization and afiliated. Then the next (2) out of (3) inmates assigned to the cell to occupy with Plaintiff were also members of the Blood organization.

~~On the April 20, 2012~~

61). Upon information and belief inmate Poindextor #A637222 manipulated inmate Graham to induce a dispute with Plaintiff, and initiate a physical altercation with Plaintiff on April 20, 2012. (See statement written by Grover Sibert, marked ~~two~~ as exhibit R-    ). Defendant Hall witnessed ~~this~~ this incident and ~~he~~ interviehned at which time he discussed the issue with Plaintiff and received information from Plaintiff about said plot. Defendant Hall referred Plaintiff to defendant Dodrill upon plaintiff's request for (P.c). At that time defendant Dodrill arived to the ~~se~~ scene of the incident at which time plaintiff informed him of the existance of a ongoing plot, and that he was being targeted by inmate Poindextor and other inmates. Defendant Dodrill informed Plaintiff that he would follow up with him later back at the unit about his situation but he (Dodrill)

failed to follow up with Plaintiff.

62). On April 25, 2012 inmate Reese #A639929 arived at (R.C.I) and institutional staff member there had assigned him to a cell right next door to Plaintiff's cell in Unit 4B After clearing that cell, in spite of the institutional Seperation which is referred to in paragraph (58), that resulted from inmates Reese #A639929 participation in a group attack on plaintiff, which is reffrenced in paragraph (55).

63). After being informed by Plaintiff that inmate Reese had been placed into the cell next to Plaintiff and of the increased acts of inmates taunting and harassing plaintiff, Olivia Johnson Contacted (R.C.I) Administration and expressed her Consorns for Plaintiff's safety and she also informed them of the institutional Seperation between Plaintiff and inmate Reese when she informed them that Reese had been placed in a cell next door to Plaintiff's assigned cell. However, (R.C.I) Staff waited for a coupple of days to pass before taking action to seperate Reese from Plaintiff, when it appeared that Plaintiff was not going to retaliate on Reese.

64). From About April 25, 2012 to About April 27, 2012 inmates Reese And Poindextor made attempts to have Plaintiff's cell mate (Sibert) create conflict/ Altercation. thereby trying to intentionally Aggervate Plaintiff, And they even Asked Sibert to Attack Plaintiff. (See exhibit R-    ).

65). On April 27, 2012 inmate Sibert set At A tabel in the Cafeteria with inmates Poindextor. ~~and Reese At~~ Upon information And belief this is the time on April 27, 2012 that inmate Sibert witnessed inmate Poindextor And Reese discuss A plot on plaintiff, And Sibert witnessed inmate Poindextor discuss plains to group Assault (jump) Plaintiff in the Near future. (See exhibit R-    ). At that time inmate Sibert indicated that he Also witnessed more discussion About Plaintiff. (For details see exhibit R-    ).

66). On May 1, 2012 Plaintiff was ordered to report to defendant Lisath's office As A result of frequent telephone calls from Olivia Johnson About Plaintiff's safety, And Plaintiff's Attorney Contacting (R.C.I) Administration. While in defendant Lisath's office Plaintiff provided A history of said plot and attacks carried out on him including events which had occured

in society prior to his incarceration, and he informed defendant Lisath that the Blood organization members at every institution had been targeting him, and that Sibert informed him and wrote a statement indicating that he witnessed inmate Poindextor discuss plans to have Plaintiff group attacked in the near future, and that various inmates have been teaming up with one another at the telephone area in attempts to induce altercation with him so that any incidents which may occur can be used to disguise planned attacks on him.

67). On May 1, 2012 after defendant Lisath had completed his discussion about said plot, he ordered defendant Cunningham to come to his office and escort Plaintiff to the shift command office to receive a (P.C) statement and begin (P.C) process. Defendant Cunningham escorted Plaintiff to the shift command's office where she instructed Plaintiff to write only a brief statement after Plaintiff had informed her of all the information he provided defendant Lisath. At that time Plaintiff wrote a brief statement about said plot and inmates Poindextor, Starks, Doudley and other inmates targeting him and plan

to attack him (Plaintiff). It must also be noted that plaintiff informed defendant Lisath and Cunningham that the said plot's orchestration also involves inmates trying to have his cell mates attack which resulted in reseant serious injuries in which he sustained at (w.c.i). Defendant Lisath ordered defendant Cunningham to house Plaintiff in a cell alone, inside of (R.C.I) medical building.

68). No one met with Plaintiff until May 4, 2012 at which time defendants Guy and Letts met with Plaintiff for the first and last time in relations to his (P.C) request. Plaintiff briefed defendants Guy and Letts on said plot at which time defendant Guy claimed to have not seen Plaintiff's signed (P.C) request form and written statement dated May 1, 2012, as he told Plaintiff to sign another (P.C) request form and write another statement. It must be noted that Plaintiff later discovered that the May 1, 2012 signed (P.C) request form and written statement was available to defendants Guy and Letts. However, when Plaintiff made a request to make a telephone call to his attorney to protect his legal intrist and he explained the relavence of the said plot a his current case,

defendant Guy sought opportunity to shift blame
on Plaintiff thereby claiming that Plaintiff would
not comply. Defendant Guy rudely ordered
Plaintiff Durham out of the room, and to return
back to his cell. (see


69). On May 4, 2012 defendants Letts and Guy
left and never returned to conduct a (P.C)
hearing, they denied Plaintiff a telephone call
to his attorney to enable Plaintiff to discuss
a purposed statement, failed to conduct further
investigation based on Plaintiff's May 1, 2012
written statement and prior (P.C) requests,
failed to request a time extention for investiga-
tion and etc. (see exhibits


70). No one met with Plaintiff since May 4, 2012
regarding (P.C), until a corrections officer
appeared at Plaintiff's cell door and told him
to gather his belongings, on May 9, 2012, that he's being
ordered to return to general population (G.P),
and his (P.C) request had been denied. Plaintiff was
then informed that if he refused to return to (GP)
he would be placed in segregation (seg).

71). I must also be noted that on or about May 2, 2012 plaintiff Durham submitted a 61 page statement, and statement by Sibert (exhibit R-  ) to Olivia Johnson in mail for her to mail to defendant Buchanan and Lisath in a way which would provide proof of delivery. On or about May 5, 2012 Olivia Johnson submitted exhibit R- and 61 page statement to defendant Buchanan in mail by certified mail, receipt number 7011 2970 0001 5804 9790, for defendant Buchanan could provide the (P.c) Committee a copy.

72). However, inspite of Plaintiff providing the said (R.c.I) staff members information pertaining to said plot and evidence and information regarding inmates Poindexter, Starks, and other inmates plans to attack Plaintiff, on May 9, 2012 plaintiff was ordered to return to Unit 4B where inmates Poindexter, Starks and others were assigned so that they could carry out their planned attack on Plaintiff.

73). On May 9, 2012 upon plaintiff's return back to Unit 4B after retrieving his property, he renewed his (P.c) request to defendant Fuller. Defendant Fuller did not initiate (P.c) upon plaintiff's request, but

instead, defendant Fuller hand cuffed Plaintiff and had him escorted to the shift command office where Lieutenant Lunsford informed Plaintiff that defendant Fuller alleged that he refused to accept assignment. At that time Plaintiff informed Lieutenant (Lt) Lunsford that he made a request for (P.C.). Plaintiff was escorted to Segregation Unit 5A and placed in a cell with Adam Jacobs, where said plot and Plaintiff's reputation of being a snitch and sexual offender had been spreaded, as inmates continued to taunt and harass Plaintiff.

74). On May 23, 2012 Plaintiff met with defendant Dodrill. At that time Plaintiff further discussed said plot and informed defendant Dodrill of a history of said plot; that inmate Poindextor and other inmates were targeting him, harassing him and planned to attack him; Plaintiff expressed his need for protection; and he informed defendant Dodrill that said taunting and harassment had continued there in Unit 5A and it included his cell mate and neighbors. (See exhibit R-8.2 for details).

75). At the time of Plaintiff's meeting with def-
endant Dodrill on May 23, 2012, he asked defen-
dant Dodrill to retrieve the evidence he had
available in his cell, so that he (Dodrill) could
begin investigation. Plaintiff also informed defen-
dant Dodrill that he discovered a letter which
discussed said plot, in which his cell mate (Adam
Jacobs) received from someone and that he
was going to obtain the letter from (Jacobs)
property and mail it to Olivia Johnson for
copies if he had an opportunity to. Defen-
dant Dodrill made attempts to discourage Plain-
tiff from persuing (P.C), and he also expressed
to Plaintiff that he would not receive the
protection he's seeking because he does not
know who in society is at the head of orches-
trating said plot. In spite of receiving said
information from Plaintiff defendant Dodrill
failed to take immediate action and secure
Plaintiff's safety. However, defendant Dodrill
did inform Plaintiff that he would come to his
cell to retrieve the evidence Plaintiff had. Defen-
dant Dodrill left the unit without retrieving the
evidence. (See written statement from Adam Jacobs,
marked as Exhibit R-7).

76). On May 31, 2012 Plaintiff met defendant Buchanan for the first time, At which time defendant Buchanan expressed knowledge of said plot, expressed a prejudice towards Plaintiff, and expressed a disregard to Plaintiff's health and safety. (see exhibits R-7, R-30.1, and R-30.2).

77). On or about June 4, 2012 for unknown reason, inmate Poindexter was Placed in (Seg) Unit 5A.

78). Plaintiff Durham's Release date from (Seg) was suppose to be June 7, 2012, and Poindextor's release date was scheduled for June 8, 2012. Misteriously Plaintiff's release date from (Seg) Unit 5A was miscalculated by defendant Cocknil as June 8, 2012.

79). On June 8, 2012 the (R.C.I) Corrections officer came to Plaintiff Durham's cell to release him at the very same time inmate Poindextor was being released, where the would be the only (2) inmates being released at that time.

Plaintiff renewed his request for (P.C.) at that time to the officer, informed the officer that Poindexter plans to attack him, and Plaintiff also informed the officer that he's scheduled for a telephone call from his attorney.

80). On about June 7, 2012, or June 6, 2012 Olivia Johnson mailed defendant Buchanan copies of exhibits R-0, R-1, R-2, R-4.1, R-4.2, R-5, R-6, R-7, R-9, and other evidence which indicate the existance of said plot against Plaintiff, and etc. (For details see exhibits R-0, R-1, R-2, R-4.1, R-4.2, R-5, R-6, R-7, and R-9).

81). On June 12, 2012 defendant Dodrill met with Plaintiff at which time he read all evidence provided him by Plaintiff, which includes but are not limited to exhibits R-0, R-1, R-2, R-4.1, R-4.2, R-5, R-6, and other evidence. (For details see exhibits R-0, R-1, R-2, R-4.1, R-4.2, R-5, and R-6).

82). On June 12, 2012 defendant Dodrill hindered

Plaintiff's documentation of facts about said plot in which Plaintiff verbally expressed to him; and after defendant Dodrill obtained the second page of Plaintiff's incomplete statement, Dodrill and Byrd left Unit 5A and NEVER Returned to continue the (P.C) process. Defendants Dodrill and Byrd failed to investigate, in violation of (AR) 5120-9-14 (B) and (D); violated (AR) 5120-9-14 (C) thereby failing to conduct a (P.C) hearing; violated (AR) 5120-9-14 (D) thereby failing to notify Plaintiff No less than 48 hours in advance of a (P.C) hearing, in the event such false claims are made which allege that the June 12, 2012 meeting was a (P.C) hearing; and violated (AR) 5120-9-14 (F) thereby failing to communicate its recommendation to the Warden (defendant Buchanan), their reason, and advise Plaintiff Durham of his Right to file objections.

83). On June 15, 2012 when Lieutenant Browning walked through (Seg) Unit 5A, Plaintiff informed him that defendant Dodrill intentionally hindered his writing a statement which would document

facts about said plot and evidence presented.
Plaintiff expressed his belief to Browning, that
he believe defendant Dodrill was intentionally
trying to have his (P.C) request denied while
avoiding proof of his receipt of information.
At that time Plaintiff and Adam Jacobs
discussed the plot with Browning at which
time Adam Jacobs provided information to
Browning regarding plot against Plaintiff.
Lt. Browning then ordered Plaintiff out of the
cell to allow him to write a complete statement.
Plaintiff was escorted to the shift command
office where he was permitted to complete a
(5) or (6) page statement and sign a (P.C) request
form. Plaintiff was then escorted back to Unit
5A where Lt. Browning ordered him to be placed
in a cell alone.

84). On about June 18, 2012 Plaintiff received
defendant Buchanan's notice of (P.C) decision
dated June 15, 2012, and the officer provided
him an objection form and told him to submit
his objection to defendant Jeffreys by U.S mail.
On June 18, 2012 Plaintiff submitted his objection
to defendant Jeffreys by (R.C.I) mail services.

85). On June 19, 2012 before defendant Jeffreys had opportunity to receive Plaintiff's objection he was given an order to leave (seg) and return to unit 4B. Plaintiff informed the officers that he had not received a final decision from defendant Jeffreys, and that he had just submitted his objection on June 18, 2012. Before Plaintiff left unit 5A he made sure inmate Jacobs and others witnessed his (P.C) request made to defendant Brown. Defendant Brown responded, "No!", and he then told Plaintiff to exit unit 5A. Plaintiff asked inmate Jacobs if he heard Brown deney him (P.C) and Jacobs said, "yes". Plaintiff was then escorted to unit 4B by an officer who had arived at that time.

86). On June 19, 2012 ~~shortly after~~ as Plaintiff conversed on the telephone with Olivia Johnson and family he was harassed by Poindextor, Starks and others, and attacked by them. Plaintiff was punched in his throat, head, face, and momentairly knocked unconcious but regained concious when he fell to the floor, and etc. Plaintiff's vocal cord is damaged and he sustained

multiple other injuries, including psychological damage and emotional distress.

87). On June 19, 2012 when officer said to be defendant Blair arived to the scene he asked Plaintiff what happend. Plaintiff then informed defendant Blair that inmates Poindextor, Starks and (2) other inmates group assaulted him, when defendant Blair asked what was the incident pertaining to, plaintiff informed him that Poindextor and said inmates were participants in a plot against him, and were harassing him while he was on the telephone, trying to induce altercation by controlling his use of the telephone and they carried out a planned attack on him. However, defendant Blair fabricated a Conduct Report which alleged that admitted to fighting inmate Poindextor.

88). Plaintiff will request permision or leave to amend this Complaint but due to (S.O.C.F) Staff continued effort to help (O.D.R.C) officials and defendants named herein, avoid civil liability thereby taking Plaintiff's original Complaint in which he requested Copies of, and not giving him a return of the Complaint

And Copies, Plaintiff had to Rush this Complaint
for timely filing. There is a lot more to this
Complaint which will include claims ~~of~~ Relative
to the other listed defendants.

~~88) O Plaintiff~~

 VI. Exhaustion of Legal Remedies.

89). Plaintiff used the prisoner grievance procedure
And filed Complaints regarding issue in this
civil Complaint. However (R.C.I) inspector,
(L.E.C.I) institutional inspector, And (S.O.C.F)
institutional inspector hindered Plaintiff's
filing of grievances for majority of the
Complaints and hindered Plaintiff's exhaustion
of legal remedies.

VII. Legal Claims.

90). Plaintiff reallege and incorporate by reference
paragraphs 1-89.

91). ~~Plaintiff~~ defendants Buchanan, Lisath, Dodrill,

Byrd, Guy, Letts, Mohr, Jeffreys, Smith, Brown, Eleby and Reese acted deliberately indifferent to this rights afforded him under the protections of the Eighth Amendment to the U.S. Constitution, ie., (the right to be free from the infliction of cruel and unusual punishment), thereby failing to take reasonable measures to abate the risks of continued harassment and attacks on Plaintiff. The said defendants acts and omissions cause Plaintiff serious injuries, pain and suffering, emotional distress and psychological damages.

### VIII. PRAYOR FOR RELIEF.

91. Wherefore, Plaintiff respectfully pray that this Court enter judgement:

92). Granting Plaintiff Durham Compensator damages in the amount of $3,000,000.00, (jointly) and punitibe damages in the amount of $200,000.00 each (severally) from Gary Mohr, Rob Jeffreys, William Eleby, Keith Smith, Timothy Buchanan, Jeff Lisath, James Dodrill, JR Byrd, Mark Guy, Robert Letts, Darrel

~~DARREN~~ BROWN, AND DARREN HALL.

93). Plaintiff seeks a jury trial on all ~~its~~ issues triable by jury;

94). Plaintiff seeks ~~attorneys fees~~ an order granting payment of costs to counsel; and

95). Plaintiff seeks any additional relief this court deems just, proper and equitable.

Date June 12, 2014.

Respectfully submitted,

Roy A. Durham, Jr.,
#A590058
(S.O.C.F)
1724 State Route 728
Lucasville, Ohio 45699

VERIFICATION.

I Roy A. Durham read the foregoing Complaint and hereby verify that the matters alleged herein are true, except for matters alleged on information and belief, and as to those I believe them to be true. I certify under penalty of Porgery that the foregoing is true and correct. Executed at Lucasville ohio on June 12, 2014.