IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROY A. DURHAM, JR.,                          :
                                             :        Case No. 2:14-cv-581
            Plaintiff,                       :
                                             :        JUDGE ALGENON L. MARBLEY
      v.                                     :
                                             :
GARY C. MOHR, et al.,                        :        Magistrate Judge King
                                             :
            Defendants.                      :

## OPINION & ORDER

This matter is before the Court on *pro se* prisoner Plaintiff's Objections, (Doc. 39), to the

Magistrate Judge's April 10, 2015 **Report and Recommendation**, (Doc. 37), recommending

that the Court grant Defendant's Motion to Dismiss in full. The **Report and Recommendation**

also recommends denying without prejudice, with the possibility of renewal at a later stage of the

proceedings, Plaintiff's request to submit exhibits. (Doc. 36). Upon independent review by the

Court, and for the reasons set forth below, Plaintiff's Objections are hereby **OVERRULED** and

the Court **ADOPTS and AFFIRMS** the Magistrate Judge's **Report and Recommendation.**

## I.      BACKGROUND

On June 17, 2014, Plaintiff filed a complaint while incarcerated at the Southern Ohio

Correctional Facility ("SOCF"). (*Compl.*, Doc. 3). The Plaintiff signed the complaint on June 12,

2014. The defendants named in the original complaint were as follows: officials of the Ohio

Department of Rehabilitations and Correction ("ODRC"), the Warden of the Toledo Correctional

Institution ("ToCI"), 30 employees at the Ross Correctional Institution ("RCI"), and three

employees at the Warren Correctional Institution ("WCI"): Michael Sheets, the warden at WCI,

and Justin Johnson and Rosalie Battles, both case managers at WCI. As the Magistrate Judge

noted, the original complaint referred to a separate lawsuit filed by plaintiff in the Cincinnati Division of this Court, *Durham v. Chief Bureau of Classification and Reception*, 1:13-cv-226 (S.D. Ohio), which addresses events at WCI. (*Id*. at ¶ 54). The remainder of the original complaint concerned alleged events that took place at RCI.

The Magistrate Judge performed an initial screen of the original complaint on June 17, 2014. (Doc. 4). Pursuant to the screen, the Magistrate Judge recommended that the claims against Michael Sheets, Justin Johnson and Rosalie Battles be dismissed without prejudice because similar claims against those defendants were raised in the pending case, 1:13-cv-226. The Magistrate Judge also recommended that claims against defendant Keith Smith be dismissed as untimely, as well as all other claims alleged to have occurred more than two years prior to June 12, 2014, particularly those at RCI, as those events fell outside of the two-year statute of limitations for § 1983 cases brought in Ohio.

On July 10, 2014, the Plaintiff filed an amended complaint, in which he named as defendants only employees of ODRC and RCI. (Doc. 8). Noting that the amended complaint did not assert claims against Sheets, Johnson or Battles, the Magistrate Judge withdrew its Report and Recommendation. (Doc. 7). Accordingly, Sheets, Johnson and Battles were terminated as defendants on July 10, 2014.

The complaint, brought pursuant to 42 U.S.C. § 1983, raises allegations of deliberate indifference to Plaintiff's health and safety in violation of his Eight Amendment rights, as well as allegations of unfair disciplinary proceedings in violation of his Fourteenth Amendment rights. Specifically, the complaint alleges a plot against Plaintiff that began in society, in which people induce conflict with him and intentionally aggravate him. He alleges that such a plot has continued during his incarceration at the various prisons to which he has been assigned, as he is

2

continuously taunted and harassed by inmates, and occasionally attacked. Plaintiff's complaint details his filing of administrative grievances and complaints, in which he reports the harassment, attacks and taunting, and requests to be placed in "protective control," rather than placed in segregation or transferred to different institution. The complaint also details what he considers to be failed investigations into the incidents he reports, unfair administrative proceedings and disciplinary procedures, including extended stays in segregation, and various prison staff members' failures to protect him from other inmates, all as part of the same conspiratorial plot against him. In addition, Plaintiff alleges that certain defendants who work in mental health services acted with deliberate indifference to his serious medical needs by failing to treat his mental health conditions.

The Magistrate Judge advised Plaintiff on a number of occasions of his obligation to provide a sufficient number of copies of his complaint or amended complaint, as appropriate, to enable the United States Marshals Service to effect service of process on the named defendants; the Magistrate Judge also advised Plaintiff multiple times of the requirement under Fed. R. Civ. P. 4(m) that he must effect service within 120 days of filing, or face dismissal. *See*, *e.g*., (*Order* and Report and Recommendation, June 17, 2014, Doc. 4 (advising Plaintiff that if he were to submit a copy of the complaint, summons and a Marshals Service form for each of the remaining defendants, the Marshals Service would effect service of process; advising Plaintiff that the Court may dismiss claims not served with process within 120 days); *Order*, July 10, 2014, Doc. 7 (granting motion to amend, but noting that although plaintiff had submitted summonses and Marshals Service forms for at least some defendants, he had not provided service copies of the amended complaint with attached exhibits for each defendant, and advising Plaintiff that if he wanted the Marshals Service to make service of process, he must provide copies; reminding

Plaintiff of the 120 day deadline); *Order*, October 2, 2014, Doc. 10 (noting that plaintiff had

failed to provide service copies of the Amended Complaint and ordering Plaintiff to demonstrate

effective service by October 17, 2014, or show cause why the claims against un-served

defendants should not be dismissed); *Order*, October 27, 2014, Doc. 12 (responding to Plaintiff's

filing, Doc. 11, suggesting that because he had been granted leave to proceed *in forma pauperis*,

he was not required to provide copies of the amended complaint, and explaining that he is not

entitled to free copies of his filings; providing Plaintiff a final grant of 30 days in which to

provide the court with documents necessary for Marshals Service to effect service of process). It

was not until November 7, 2014 that Plaintiff provided 34 copies of the amended complaint for

service, and even then he provided copies of only some exhibits. Nonetheless, on November 17,

2014, the Magistrate Judge ordered the United States Marshals Service to effect service of

process. (Doc. 14). On January 5, 2015, the summonses issued to Rich Cockrill, L.C. Coval,

Harnes, Earlena Schorr, Timothy Stirr and Robert Whitten were returned unexecuted, with the

notation that they were no longer employed at RCI. (Doc. 21). In a January 13, 2015 Order, the

Magistrate Judge advised the Plaintiff a final time that claims against any defendant not served

with process within 120 days must be dismissed. (Doc. 27).

On April 6, 2015, Plaintiff filed a motion requesting that certain exhibits be made a part

of his pleadings. He explained that such exhibits showed that he had acted diligently in trying to

exhaust administrative remedies for the claims he raises in this case. The exhibits included

copies of grievances Plaintiff submitted, and responses and decisions from prison staff.

On January 28, 2015, Defendants filed a Motion to Dismiss. (Doc. 28). In that motion,

Defendants moved this Court to dismiss the following portions of the amended complaint: (1)

portions outside the two-year statute of limitations for § 1983 claims; (2) portions involving

claims against defendants previously dismissed; (3) portions asserting claims against defendants who were not served with process within the guidelines of Fed. R. Civ. P. 4(m); and (4) portions asserting claims against Defendant Mohr pursuant to the doctrine of respondeat superior, which is not permissible in cases brought under § 1983. (Doc. 28).

On April 10, 2015, the Magistrate Judge issued its Report and Recommendation as to Defendants' Motion to Dismiss, as well as to Plaintiff's Motion to Add Exhibits. (Doc. 37). The Magistrate Judge recommended that: (1) the claims arising out of events alleged to have occurred prior to June 12, 2014 be dismissed as untimely; (2) the claims against defendants Sheets, Johnson and Battles be dismissed without prejudice to pursuit in 1:13-cv-266, rather than this case; (3) the claims against unserved defendants Schorr, Cockrill, Stirr, Haynes, Whitten and Coval be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m); (4) the claims against Defendant Mohr be dismissed. Further, the Magistrate Judge recommended denial without prejudice of plaintiff's request to submit and make certain exhibits part of the pleadings, and suggested that if appropriate, such exhibits could be submitted via a motion or at trial.

The Plaintiff objected to the Magistrate Judge's Report and Recommendation on April 27, 2015. This matter has been fully briefed and is ripe for review.

## II.     STANDARDS OF LAW

When objections to a magistrate judge's report and recommendation are received on a dispositive matter, the assigned district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see also* 28 U.S.C. § 636(b)(1). General objections are insufficient to

preserve any issues for review: "[a] general objection to the entirety of the Magistrate [Judge]'s report has the same effect as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir.1991). Nevertheless, the objections of a petitioner appearing *pro se* will be construed liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

A magistrate judge's decision on a non-dispositive matter will be reversed by the district court if it is "clearly erroneous or is contrary to the law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Review under Rule 72(a) provides "considerable deference to the determinations of magistrates." *In re Search Warrants Issued Aug. 29, 1994*, 889 F.Supp. 296, 298 (S.D. Ohio 1995) (quotation omitted). With respect to a Magistrate Judge's legal conclusions, however, "this Court must exercise its independent judgment," and it may "overturn any conclusions which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Siegler v. City of Columbus*, No. 2:12-CV-00472, 2014 WL 1096159, at *1-2 (S.D. Ohio Mar. 19, 2014) (Marbley, J) (citing *Gandee v. Glasser*, 785 F.Supp. 684, 686 (S.D. Ohio 1992), *aff'd*, 19 F.3d 1432 (6th Cir.1994) (quotation omitted)). It is ordinarily the case that the District Judge need not consider any argument not presented to the Magistrate Judge. *Cf. Carter v. Wilkinson*, 200999 WL 891748, *5 (S.D. Ohio March 30, 2009) (Marbley, J.).

A *pro se* civil rights complaint should be construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Under Rule 12(b)(6) the Court must construe the complaint in the light most favorable to the nonmoving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *Murphy v. Sofamor Danek Gp., Inc.,* 123 F.3d 394, 400 (6th Cir. 1997). That being said,

Federal Rule of Civil Procedure 8(a) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2), (3). The purpose of Rule 8 is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) and Fed. R. Civ. P. 8(a)(2)). While this notice pleading standard does not require detailed factual allegations, it does require more than the bare assertion of legal conclusions. *Twombly*, 550 U.S. at 555. Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, a complaint that suggests "the mere possibility of misconduct" is insufficient; rather, the complaint must state "a plausible claim for relief." *Id.* at 1950 (citing *Twombly*, 550 U.S at 556).

### III.    ANALYSIS

The Plaintiff objects to each of the Magistrate Judge's conclusions in favor of Defendants' four arguments in their partial Motion to Dismiss. Upon independent, *de novo* review, this Court concludes that the Magistrate Judge's recommendations are well-taken, and adopts each in turn, with some slight variations in rationale. Further, this Court agrees that Plaintiff should be denied leave to add proposed exhibits to his complaint, as such documents are entered more appropriately into the record by motion or at trial. Finally, the Plaintiff moves for leave to file a supplemental complaint alleging new facts concerning another inmate attack in March of 2015.

7

### A.  Statute of Limitations

As the Magistrate Judge properly concluded, Plaintiff signed the complaint on June 12, 2014, so any events alleged to have arisen before June 12, 2012 generally would be considered untimely. *Browning v. Pendleton*, 869 F.2d 989, 990 (6th Cir. 1989) (two-year limitations period for actions arising in Ohio and brought under 42 U.S.C. § 1983). In his response to Defendant's Motion to Dismiss, the Plaintiff argued that the two-year statute of limitations should not apply to events which took place two-years or more before filing because they were based on a continuing course of misconduct. Although a narrow exception to the two-year statute of limitations exists pursuant to the "continuing violations" doctrine, that Magistrate Judge properly concluded that the doctrine is inapplicable in this case.

Generally, the limitations period starts to run "'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Bell v. Ohio State Univ.,* 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Kuhnle Bros., Inc. v. County of Geauga,* 103 F.3d 516, 520 (6th Cir. 1997)). The running of the period may be tolled, however, if a plaintiff establishes a "continuing violation." *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003).  The Sixth Circuit has warned that the continuing violations doctrine was originally crafted for and applied most commonly in Title VII cases, and as such is rarely extended to § 1983 actions. *Id.* at 267.

Traditionally, the Sixth Circuit recognized two distinct categories of continuing violations, namely, those: (1) alleging "serial violations" by providing proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period; and (2) those "identified with a longstanding and demonstrable policy of discrimination." *Id.* at 266, 268. In *Nat'l R.R. Passenger Corp. v. Morgan*, however, the Supreme Court narrowed the continuing violations doctrine in the Title

VII context, holding that the first category of a continuing violation, a serial violation, is no longer recognized. 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). The Supreme Court explained that:

> discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180–or 300–day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.

*Id.* at 113, 122 S.Ct. 2061. In *Sharpe*, the Sixth Circuit extended the rationale in *Morgan* to the § 1983 context, holding that *Morgan* indicated that "when [a plaintiff] seeks redress for discrete acts of discrimination or retaliation, the continuing violation doctrine may not be invoked to allow recovery for acts that occurred outside the filing period." *Sharpe*, 319 F.3d at 267 (citing *Morgan*, 536 U.S. at 113); *see also Taylor v. Donahoe,* 452 F. App'x 614, 619 (6th Cir. 2011) and *Bruce v. Corr. Med. Servs., Inc.*, 389 F. App'x 462, 465-67 (6th Cir. 2010) (applying *Morgan* and *Sharpe* to a continuing violations analysis of an Eighth Amendment claim for deliberate indifference to a serious medical need brought pursuant to § 1983).

Thus, each discrete incident alleged constitutes a separate unlawful action that must fall within the statutory period. *Sharpe*, 319 F.3d at 267. Continuing violations that constitute "a longstanding and demonstrable policy of discrimination," on the other hand, remain cognizable, but the plaintiff must establish some form of intentional discrimination against an entire class of which the Plaintiff was a member. *Id.* at 268; *Bruce*, 389 F. App'x at 466, and n. 1 (determining that for statute of limitations purposes, plaintiff failed to allege facts permitting application of the continuing violation theory because each act of refusing medical care represented a "discrete unlawful act[] (beyond passive inaction) that trigger[ed] the statute of limitations," and Plaintiff

had failed to allege any facts showing a demonstrable policy of discrimination). Furthermore, the Sixth Circuit has stated that "[p]assive inaction does not support a continuing violation theory." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (internal citations omitted).

Pursuant to *Morgan*, *Sharpe*, and *Bruce*, each alleged act of refusing Plaintiff the recourse he sought through the grievance process, or denying him fair administrative procedures, was a discrete unlawful act that triggered the statute of limitations. Further, allegations of prison staffs' failures to conduct the thorough investigation and follow-up after other inmates allegedly attacked Plaintiff are insufficient to establish a continuing violation, as inaction is not enough to satisfy the doctrine. *Eidson*, 510 F.3d at 637 (finding that defendants' continued prosecution of plaintiff and failure to conduct thorough investigation to exonerate him after allegedly discovering exonerating evidence failed to establish a continuing violation, as mere inaction is not enough to satisfy the doctrine).

While Plaintiff alleges a broader "plot" to harass and taunt him, which continued into his incarceration, as well as alleges that this plot includes prison staffs' failures to protect him and provide him proper recourse, neither do such facts fall within the second category of the continuing violation doctrine. In the context of Title VII and other cases brought pursuant to anti-discrimination laws—the context under which the continuing violations doctrine is normally applied—the plaintiff must show facts demonstrating a longstanding and demonstrable policy of discrimination, as well as establish some form of intentional discrimination against an entire class of which the plaintiff is a member. Thus, extending the second category into the context of a § 1983 case like this one—which does not allege that the Plaintiff is a member of a class subject to discriminatory treatment—is attenuated at best. In *Cuco v. Fed. Med. Ctr.-Lexington*, a

sister district court explained the policy reasons and practical difficulty in extending the second

category of the continuing violations doctrine into the § 1983 context:

> The Sixth Circuit generally disapproves of applying the doctrine in civil rights actions. *Sharpe*, 319 F.3d at 267 ("This Circuit employs the continuing violations doctrine most commonly in Title VII cases, and rarely extends it to § 1983 actions.") (applying the Supreme Court's restrictive application of the doctrine in *Nat'l R .R. Passenger Corp. v. Morgan,* 536 U.S. 101, 110-12, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) to civil rights claims pursued under Section 1983); *LRL Properties v. Portage Metro Hous. Auth.,* 55 F.3d 1097, 1106 n. 3 (6th Cir.1995). This may be due, in part, to the fact that considerations which justify the application of the continuing violations doctrine in race and sex discrimination cases are often absent outside of that context. In *Bell v. Chesapeake & Ohio Ry. Co.,* 929 F.2d 220 (6th Cir.1991), the Sixth Circuit explained that the doctrine developed because of the concern "that many discriminatory acts occur in such a manner that it is difficult to define precisely when they took place." The facts which, only over time, make it clear to a plaintiff that he or she is or may be the victim of race or sex discrimination tend to "unfold rather than occur." *Bell,* 929 F.2d at 223. Thus, by the time a plaintiff discovers that adverse employment decisions may have been the result of a discriminatory work environment, many of the initial acts of discrimination may fall outside the limitations period. The continuing violations doctrine may thus be considered a rule designed to ameliorate the harsh consequences of a strict application of the discovery rule under the statute of limitations. *Id.; Barcume,* 819 F.Supp. at 636.

*Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *27-30 (E.D. Ky.

June 9, 2006) *aff'd and remanded sub nom. Cuco v. Fed. Med. Ctr., Lexington*, 257 F. App'x 897

(6th Cir. 2007).

The *Cuco* court held, therefore, that even if the prisoner plaintiff's claims could have

been considered to fall within the second category, the policy justification for utilizing the theory

did not apply to the facts of the case because it could not be said that a decision to treat the

prisoner plaintiff's anemia improperly "unfolded rather that occurred." *Id*. at *29. Instead, any

deficiencies in her treatment stemmed from adherence to a treatment regimen given to her at the

beginning of her incarceration. *Id*. at *30. The Sixth Circuit affirmed the district court in an

unpublished opinion and fully concurred with its rationale. *Cuco v. Fed. Med. Ctr., Lexington*,

257 F. App'x 897, 900 (6th Cir. 2007) ("As the district court's extensive opinion carefully and correctly sets out the law governing Cuco's claims and clearly articulates the reasons underlying its decision, the issuance of a full written opinion by this court would serve no useful purpose.").

Extending the rationale in *Cuco* to this case, although Plaintiff alleges that the denials of his grievances, unfair disciplinary procedures, or failures to respond to inmate harassment toward him are all part of a larger plot against him, these related events do not fall within the policy justifications that originally motivated the second category of the continuing violations doctrine. Like in *Cuco*, the events that Plaintiff alleges are not of the type that, due to their nature, unfolded rather than occurred, because each alleged illegal action was not impossible to notice except when viewed in hindsight and in the aggregate. Instead, each discrete incident gave plaintiff sufficient notice of any alleged illegal action, a fact which is evidenced by Plaintiff's continuous filing of both individual grievances and lawsuits. As explained *supra*, discrete rights violations, even if related, individually trigger the statute of limitations. *Sharpe*, 319 F.3d at 267.

Finally, such a holding has little effect on Plaintiff as he raised his pre-June 12, 2014 claims pertaining to events which occurred at WCI in 1:13-cv-266. *See Vandiver v. Prison Health Servs., Inc.*, No. 1:14-CV-350, 2014 WL 2115264, at *10 (W.D. Mich. May 21, 2014) (finding continuing violations doctrine inapplicable and noting that the Plaintiff had "ample opportunity" to litigate his pre-statute of limitations claims in another case that he filed).

In sum, this Court agrees with the Magistrate Judge that the continuing violations doctrine does not apply, and, as such, claims arising out of events that are alleged to have occurred prior to June 12, 2012 are **DISMISSED** as untimely.

### B.  Dismissal of Claims against Sheets, Johnson and Battles

Plaintiff argues that allegations in his amended complaint concerning Sheets, Johnson and Battles are properly before this Court, and that the Magistrate Judge erred in terminating them. He contends that these defendants are properly joined in the complaint under Federal Rule of Civil Procedure 20 because they participated in the ongoing campaign of harassment and plotting against him across a number of Ohio state prison facilities.

As the Magistrate Judge observed in her June 17, 2014 Order and Report and Recommendation, Plaintiff asserted similar claims against Sheets, Johnson and Battles in another case currently pending in this District, *Durham v. Chief Bureau of Classification and Reception*, *et al.*, 1:13-cv-226 (S.D. Ohio). Accordingly, the Magistrate Judge recommended that Plaintiff's claims against those three defendants be pursued in 1:13-cv-226, and, be dismissed without prejudice in this case. Thereafter, Plaintiff did not object to the termination of Sheets, Johnson and Battles, but, instead, filed an amended complaint which omitted them from the list of defendants in the case. Those defendants subsequently were terminated from the docket.

On December 31, 2014, the court in 1:13-cv-226 dismissed claims against Battles without prejudice for failure of service. Thus, claims are not pending against Battles in 1:13-cv-226, but remain pending against Sheets and Johnson. Accordingly, since claims against Battles were dismissed only because they were being pursued in 1:13-cv-226, and they no longer are pending in that case, such is not a proper reason for their dismissal any longer. Instead, this Court concludes that claims against Battles, and incidentally against Johnson and Sheets, are time-barred, as all claims pertaining to them involve incidents alleged to have arisen before April 2, 2012, the date Plaintiff was transferred from W.C.I. to R.C.I. As concluded, all incidents alleged to have occurred prior to June 12, 2012 are time-barred.

13

Plaintiff makes the alternative argument that his claims against Battles, Johnson and Sheets in 1:13-cv-226 are related to claims made in this case, and thus that such claims should be joined, as the same evidence will be used and common questions of law will arise in both bases. Plaintiff's argument is not well taken. First, Plaintiff filed separate cases, rather than moving to supplement his complaint to allege new claims. Second, this argument is unavailing because it is unrelated the primary reason that claims against these three defendants cannot be included in this case, which is that all claims related to them are time-barred.

Thus, this Court **AFFIRMS** the Magistrate Judge's recommendation that all claims against Sheets, Johnson and Battles be **DISMISSED**, but finds they should be dismissed with prejudice as untimely.

### C.  Claims Against Defendants Not Served With Process

The Magistrate Judge dismissed without prejudice all claims asserted against defendants Earlena Schorr, Rick Cockrill, Timothy Stirr, Haynes, Robert Whitten and L.C. Coval for failure to effect serve of process within 120 days of the assertion of the claims against them, and failure to show good cause for failure to meet the deadlines. At the time the Magistrate Judge issued its opinion, nearly 10 months had passed since Plaintiff filed his original complaint, and 9 months had passed since he filed his amended complaint.

 Fed. R. Civ. P. Rule 4(m) requires completion of service of process within 120 days after filing of the complaint; dismissal of the action "shall" follow after 120 unless the "plaintiff shows good cause" for failure to meet the 120–day deadline." *See*, *e.g. Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 521 (6th Cir. 2006). Establishing good cause is the responsibility of the party opposing dismissal for failure to effect service as required by the rules, and "necessitates a demonstration of why service was not made within the time constraints." *Id.* at 514. Fed. R. Civ.

P. 12(b)(4) and (5) provide for dismissal of an action for "insufficient process" and "insufficient service of process," respectively. Further, under Fed. R. Civ. P. 12(b)(2), in the absence of service of process, the court may not exercise jurisdiction over a party the complaint names as a defendant, and thus dismissal is proper. *Engler v. Arnold*, No. 4:14-CV-2442, 2015 WL 4213642, at *2 (N.D. Ohio July 10, 2015).

This Court agrees that Plaintiff has failed to demonstrate good cause for his failure to effect timely service of process on Earlena Schorr, Rick Cockrill, Timothy Stirr, Haynes, Robert Whitten and L.C. Coval. The Sixth Circuit has found that Rule 4(m) "must be construed leniently with regard to *pro se* litigants." *Habib v. Gen. Motors Corp.*, 15 F.3d 72, 74 (6th Cir. 1994). When assessing if a *pro se* litigant has demonstrated good cause for failure to effect timely service, the question is whether the litigant can show he/she "made a reasonable and diligent efforts to effect service." *Id*. In *Habib*, for instance, the Court found that although the *pro se* litigant had failed to effect timely service, the record showed that immediately after the Court issued a notice instructing the *pro se* plaintiff how to effect service of process, the plaintiffs attempted to effect service in accordance with the magistrate judge's instructions. *Id*. at 74-75. Shortly thereafter, however, the deputy clerk returned plaintiffs' service papers because they did not submit an acknowledgment form. A few days later, the Defendant moved to dismiss. The next day, a family member personally served the defendant's agent. Nonetheless, the defendant renewed its motion to dismiss, and the district court granted it. The *Habib* Court held that the *pro se* plaintiffs had no reason to know their service of process was technically inadequate, and that since they made a "diligent and reasonable" effort to attempt to effect service according to the magistrate judge's instructions within the time period, and ultimately did, the district court abused its discretion in dismissing the case. *Id*. at 75.

15

Unlike the plaintiffs in *Habib*, the Plaintiff has not demonstrated that he made a diligent and reasonable effort to effect service. As detailed above, the Magistrate Judge alerted the Plaintiff on no fewer than four occasions of his responsibility to effect service of process within 120 days, and provide the proper number of copies of the amended complaint at his own expense. Plaintiff filed his amended complaint on July 10, 2015, but failed to provide enough service copies until November 7, 2015.

Even assuming the Plaintiff genuinely was confused by the requirement that he had to pay for and provide sufficient copies of the amended complaint himself, and thus that he made every reasonable effort to effect service through November 7, 2014, the date on which he provided sufficient copies of the amended complaint, he still failed to effect service of process on Schorr, Cockrill, Stirr, Haynes, Whitten and Coval by April 2015, when the Magistrate Judge recommended dismissal of those defendants. As the Magistrate Judge observed, Plaintiff offers no suggestion that the can provide a valid address for these defendants.  Thus, this case is like *Chasteen v. Johnson*, in which this Court found that the magistrate judge had accorded the *pro se* litigant "considerable accommodation and flexibility in the matter of service of process" over a nine month period, and declined to grant plaintiff yet another extension of time. No. 2:12-CV-229, 2013 WL 118889, at *1 (S.D. Ohio Jan. 9, 2013).

Accordingly, this Court **AFFIRMS** the Magistrate Judge's recommendation that all claims against Schorr, Cockrill, Stirr, Haynes, Whitten and Coval be **DISMISSED** without prejudice for failure to effect service of process.

### D.  Claims against Mohr

Plaintiff objects to the dismissal of claims asserted against Defendant Mohr. In their Motion to Dismiss, the Defendants argued that claims against Gary Mohr, the Director of the

16

Ohio Department of Rehabilitation and Correction, should be dismissed. Defendants expounded that since § 1983 liability will not be imposed solely on the basis of *respondeat superior*, and because Plaintiff failed to allege that Mohr took any direct actions regarding Plaintiff's confinement and allegations of failure to protect, Plaintiff failed to state a claim entitling him to relief regarding Mohr. *See*, *e.g*., *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984) ("Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.") (citing *Hays v. Jefferson County,* 668 F.2d 869, 872–74 (6th Cir. 1982)). Plaintiff responded that Mohr should not be dismissed as Mohr has failed to remedy his situation since 2011, and, in the alternative, he requested leave to amend his complaint to add more specific allegations regarding Mohr.

The Magistrate Judge concluded that the majority of Plaintiff's allegations regarding Mohr—including those alleging Mohr's deliberate indifference to Plaintiff's safety and health and Mohr's failure to ensure the fairness of disciplinary proceedings—amounted to "labels and conclusions" which were insufficient to state a claim under *Iqbal*/*Twombly*. Further, the Magistrate Judge concluded that allegations regarding Mohr's failure to ensure Plaintiff's right to fair proceedings were not cognizable under § 1983 because a supervisor cannot be held responsible for a subordinate's actions, *see Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir.2005), and also because prison officials are not obligated to respond properly to an inmate's grievances because there is no inherent constitutional right to an effective prison grievance procedure. *See*, *e.g, Overholt v. Unibase Data Entry, Inc.,* No. 98–3302, 221 F.3d 1335 (Table), 2000 U.S.App. LEXIS 14087, at *3, 2000 WL 799760 (6th Cir. June 14, 2000); *Lee v. Mich. Parole Bd.,* No. 03–1775, 104 Fed. App'x. 490, at *493 (6th Cir. June 23, 2004). Further, the

Magistrate Judge denied Plaintiff leave to amend to include facts regarding Mohr because Plaintiff had not proffered a proposed complaint or provided the Court with any basis upon which to speculate as to the sufficiency of any facts that the Plaintiff might allege against Mohr.

Plaintiff responds that he earlier requested leave to add exhibits to his amended complaint that demonstrate that Plaintiff sent directly to Defendant Mohr's office requests for relief and help securing his safety, as well as correspondence notifying Mohr of institutional-level misconduct. The Magistrate Judge denied Plaintiff's request to supplement his amended complaint. Plaintiff insists, therefore, that the Magistrate Judge was in error to conclude that Plaintiff has not proffered any basis upon which to even speculate as to the sufficiency of any facts that Plaintiff might allege against defendant Mohr because she was in receipt of evidence substantiating his claims against Mohr.

Even if the Magistrate had permitted supplementation, or taken note of the supplemental exhibits, the information contained in those exhibits, according to Plaintiff's own assertions, would not overcome the bar to asserting claims sounding in respondeat superior under § 1983. This is because Plaintiff fails to allege facts showing that Mohr "encouraged the specific incident of misconduct or in some other way directly participated in it," or, at a minimum, "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Taylor*, 412 F.3d 629, 643. Instead, he only makes the accusation that Mohr was on notice of repeated constitutional violations against Plaintiff, but failed to take any action to protect him, and also that on September 18, 2015, Mohr signed a letter affirming the warden's decision to place Plaintiff in Local Control. (*See Plaintiff's Amended Complaint*, Ex. R-41, Doc. 8-1, p. 99).

As the Sixth Circuit concluded in *Taylor*, imposing liability on a prison supervisor simply pursuant to his or her responsibility to ensure the proper care and treatment of prisoners and to ensure prison staff follows proper procedures would be "tantamount" to imposing respondeat superior liability for the unlawful conduct of his staff. *Id.* (holding that "[b]ecause there is no evidence that a supervisory official implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the officers who allegedly beat Plaintiff, the district court properly granted Defendants' summary judgment motion."). Further, the rule that a supervisor must have personal involvement in the alleged unconstitutional conduct in order to be held liable under § 1983 holds true even if the supervisor has actual knowledge of the constitutional violation, as Plaintiff asserts in this case, and even if the supervisor was involved in denying a grievance which raised the alleged constitutional violations. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (prison officials cannot be held liable under § 1983 for denying administrative grievances and failing to remedy alleged retaliatory behavior because such actions are not equivalent to "approv[ing] or knowingly acquiesc[ing] in the unconstitutional conduct," for which supervisors *can* be liable); *Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005) ("[Plaintiff] merely alleged that Martin failed to remedy the situation after he had been informed of the problem via [plaintiff's] grievance. [This] allegation does not state a claim because the doctrine of respondeat superior does not apply in § 1983 lawsuits to impute liability onto supervisory personnel."); *see also Stewart v. Taft*, 235 F.Supp.2d 763, 767 (N.D. Ohio 2002) ("supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act").

Thus, Plaintiff's accusations that Mohr was in receipt of notice that prison staff members had violated his constitutional rights, but Mohr failed to take any remedial measures, without

more, fails to show Mohr is personally responsible for the alleged unconstitutional actions that caused Plaintiffs injury, which is required under § 1983 actions. *Mills v. City of Barbourville,* 389 F.3d 568, 580 (6th Cir.2004) ("In order to establish liability pursuant to § 1983, the plaintiff must prove that the defendant, as a supervisory official, is *personally* responsible for the alleged unconstitutional actions that caused his injury."). Further the fact that Mohr denied a grievance that Plaintiff appealed to him, which allegedly raised unconstitutional conduct on the part of prison staff members, does not demonstrate the Mohr can be held personally liable for that allegedly unconstitutional conduct of his inferiors under § 1983. *See Shehee*, 199 F.3d at 300.

Plaintiff argues in the alternative the Mohr should remain a defendant because, as a result of Plaintiff being shuffled constantly to new institutions, he requires a stable individual named in at least one suit in order to be able to prove the existence of the ongoing plot against him. As explained above, however, the continuing violations exception to § 1983 is narrow, and is inapplicable to the facts alleged in this case. Thus, Plaintiff cannot do more than allege discrete, unlawful acts that defendant Mohr, or any other defendant, commits, within the statute of limitations. Further, Plaintiff asserts that his conditions are a direct result of Mohr's failures to take reasonable measures, and that he would be prejudiced if he had to refile his claims against Mohr when they are related to the current case. As explained above, however, Plaintiff has failed to demonstrate that it is possible to for him to allege facts which state a claim against Mohr because none of the actions the Plaintiff attributes to Mohr are cognizable under § 1983.

Accordingly, this Court **AFFIRMS** the Magistrate Judge's decision to **DISMISS** claims involving Mohr, as Plaintiff has failed to allege facts upon which relief can be granted pertaining to Mohr. Further, this Court agrees that granting leave to amend the complaint to add facts involving Mohr would be futile, as Plaintiff has failed to demonstrate he can allege facts to state

a claim involving Mohr that is plausible on its face. *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (holding that leave to amend a complaint should be denied when the proposed amendment would be futile); *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir.2000) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.").

### E.  Motions to Add Exhibits and Motion to Supplement New Events

The Report and Recommendation also disposes of Plaintiff's non-dispositive motion to make 13 pages of exhibits part of the pleadings and the case. (Doc. 36). The Plaintiff explains in his motion that he provides the exhibits for the Court to consider "when determining the exhaustion requirement of the PLRA 42 U.S.C. § 1997(e)." The Court agrees with the Magistrate Judge's determination that since the Motion to Dismiss at issue does not address exhaustion, the Court need not consider such exhibits in relationship to this motion. If the Plaintiff has not already attached these exhibits to the amended complaint, however, the Plaintiff is directed to file a motion to supplement the amended complaint with the exhibits, as a prisoner plaintiff is instructed to attach to his § 1983 complaint any decisions demonstrating administrative dispositions of his claims. *See Wyatt v. Leonard*, 193 F.3d 876, 878-79 (6th Cir. 1999); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.), *cert. denied,* 525 U.S. 833, 119 S.Ct. 88, 142 L.Ed.2d 69 (1998).

Finally, at the end of Plaintiff's Memorandum in Support of his Objections to the Magistrate Judge's Report and Recommendation, the Plaintiff notifies this Court that he "sustained new injury" when he was attacked again on about March 29, 2015, as a result of the failures committed by defendants named in the amended complaint, as well as by defendants named in *Durham v. Moore*, No. 1:14-cv-816, another case Plaintiff filed in this District. He

21

requests leave to file a supplemental complaint, assumedly pursuant to Fed. R. Civ. P. 15(d). He does not provide further detail, however, nor does he attach a supplemental complaint. Further, it is unclear from his briefing whether these new facts are alleged under this case, or under *Durham v. Moore*, No. 1:14-cv-816. Plaintiff is directed to file a separate motion to supplement his complaint, as well as a copy of the supplemental pleading, so that the Court can perform an initial screening of the supplemental pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2), 1915A. *See Caruthers v. Corr. Med. Serv., Inc.*, No. 1:10-CV-274, 2010 WL 1744881, at *1 (W.D. Mich. Apr. 27, 2010) (stating that the amended complaint must be screened pursuant to the PLRA before an amendment is permitted).

Additionally, it is unclear from the Plaintiff's briefing whether he has exhausted administrative remedies concerning the proposed new claims and potentially new defendants as 42 U.S.C. § 1997(e) requires. Accordingly, Plaintiff is reminded before he files his motion to supplement and the supplemental pleading that in prisoner cases, supplemental claims not only must be linked to the original claims, but they also must have been completely exhausted through all steps of the prison's grievance procedure in accordance with the Prison Litigation Reform Act's mandatory exhaustion requirement. 42 U.S.C. § 1997e(a). *See Hoyt v. Rogers,* No. 10–cv–10262, 2011 WL 940350, at *4 (E.D. Mich. March 16, 2011) (denying motion to supplement pleading because prisoner's supplemental claims were either unexhausted or improperly exhausted). Thus, the Sixth Circuit has instructed that in order for a prisoner plaintiff to establish that he has exhausted administrative remedies prior to filing suit, a prisoner should attach to his § 1983 complaint any decisions demonstrating the administrative dispositions of his claims. *See Wyatt*, 193 F.3d at 878-79; *Toombs*, 139 F.3d at 1104.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Objections are hereby **OVERRULED**, (Doc. 39),

and the Court **ADOPTS and AFFIRMS** the Magistrate Judge's **Report and Recommendation.**

(Doc. 37).

**IT IS SO ORDERED.**

**s/Algenon L. Marbley_____**
**Algenon L. Marbley**
**United States District Court Judge**

**DATE: September 9, 2015**